IRA WEYMOUTH, Surviving Partner, *vs.* PENOBSCOT LOG DRIVING COMPANY.

Penobscot.    Opinion February 13, 1880.

*Penobscot Log Driving Company, is a corporation.    Construction of Charter.*
*Negligence of Agents.    Corporations.    Third persons.*

An organization under a charter, which provides, that certain persons named, with their associates and successors " are hereby made and constituted a body politic and corporate" and as such " may sue and be sued, prosecute and defend to final judgment and execution," " and may hold real and personal estate not exceeding fifty thousand dollars at any one time, and may grant and vote money," and " have all the powers and privileges, and be subject to all the liabilities incident to corporations of a similar nature," constitutes a corporation which would be liable to any person suffering damages through a negligent performance of any of its duties.

Where the charter for a log driving company provides, that the "company may drive all logs and other timber" in a certain stream, the word " may" is to be construed as permissive and not imperative.    But when the company accepts the privilege thus conferred of driving " *all* the logs," &c., it assumes a duty commensurate with the privilege conferred.    By this acceptance it has the exclusive right to drive all the logs, and the duty to drive results.

Whether the agents of a corporation have been negligent in performing their duties, is a question for the jury.

A person, not a member of a corporation, is not bound by the provisions of any vote it may have passed, or any contract it may have made, to which he is not a party.

ON EXCEPTIONS AND MOTION to set aside the verdict.

An action on the case to recover damages of the defendant corporation for carelessly and negligently preventing the plaintiffs from seasonably delivering 751,290 feet of spruce logs, and 48,780 feet of pine logs, cut and hauled by them in the winter of 1872–3, on landings on the steam between Caribou lake and Chesuncook lake, at the outlet of Chesuncook lake, in consequence of which 600,000 feet of the plaintiff's logs were not driven to market in the year 1873, but were left behind in an exposed position, where many were lost, and there was a great shrinkage in quantity and quality.

The writ is dated December 8, 1877.

Plea, general issue.

The verdict was for plaintiff for $1496.51, and the defendants move to set the same aside as against law, and against evidence and the weight of evidence.    The defendants also allege

exceptions to refusals of the presiding judge to give certain requested instructions.

The following are the provisions of the charter of the defendant corporation referred to in the argument of counsel and opinion of the court.

"An act to incorporate the Penobscot Log Driving Company : Section 1. That Ira Wadleigh, Samuel P. Strickland, Hastings Strickland, Isaac Farrar, William Emerson, Amos M. Roberts, Leonard Jones, Franklin Adams, James Jenkins, Aaron Babb and Cyrus S. Clark, their associates and successors, be, and they are hereby made and constituted a body politic and corporate, by the name and style of the Penobscot Log Driving Company, and by that name may sue and be sued, prosecute and defend, to final judgment and execution, both in law and in equity ; and may make and adopt all necessary regulations and by-laws not repugnant to the constitution and laws of this State and may adopt a common seal, and the same may alter, break and renew at pleasure ; and may hold real and personal estate not exceeding the sum of fifty thousand dollars at any one time and may grant and vote money ; and said company may drive all logs and other timber that may be in the west branch of Penobscot river between the Chesuncook dam and the east branch to any place at or above the Penobscot boom, where logs are usually rafted, at as early a period as practicable. And said company may for the purpose aforesaid clear out and improve the navigation of the river between the points aforesaid, remove obstructions, break jams and erect booms where the same may be lawfully done, and shall have all the powers and privileges and be subject to all the liabilities incident to corporations of a similar nature."

"Section 3. Every owner of logs or other timber which may be in said west branch between said Chesuncook dam and said east branch or which may come therein during the season of driving and intended to be driven down said west branch, shall on or before the fifteenth day of May in that year, file with the clerk a statement in writing, signed by such owner or owners, his or their authorized agent, of all such logs or timber, the number of feet, board measure, of all such logs or timber, and the marks thereon, and the directors or one of them shall require such owner or owners or agents presenting such statement to

make oath that the same is, in his or their judgment and belief, true, which oath the directors or either of them are hereby empowered to administer.    And if any owner shall neglect or refuse to file a statement in the manner herein prescribed, the directors may assess such delinquent or delinquents for his or their proportion of such expenses, such sum or sums, as may be by the directors considered just and equitable.    And the directors shall give public notice of the time and place of making such assessments by publishing the same in some newspaper printed in Bangor, two weeks in succession, the last publication to be before making such assessments.    And any assessment or assessments when the owner or owners of any mark of logs or other timber is unknown to the directors, may be set to the mark upon such logs or other timber.    And the clerk shall keep a record of all assessments and of all expenses upon which such assessments are based, which shall at all times be open to all persons interested."

"Section 4.  Said directors are hereby authorized to make the assessment contemplated in the last preceding section, in anticipation of the actual cost and expenses of driving, and in any sum not exceeding for each thousand feet, board measure, the sum of sixty-two and one half cents, and so in proportion to the distance which any logs or other timber is to be or may be driven between said Chesuncook dam and the places of destination, to be determined by said directors.    And if after said logs or other timber shall have been driven as aforesaid and all expenses actually ascertained, it shall be found that said assessment shall be more than sufficient to pay said expenses, then the balance so remaining shall be refunded to the said owner or owners in proportion to the said sum to them respectively assessed." Approved August 10, 1846.

An act additional, approved July 31, 1849:  "Section 1. The Penobscot Log Driving Company may drive all logs and lumber between the head of Chesuncook lake and the east branch, instead of between the Chesuncook dam and the east branch, and with all the powers, rights and privileges, and under the same conditions, limitations and restrictions, as is provided in the act to which this is additional; and may assess according to the provisions of said act, a sum not exceeding twenty-five

cents for each thousand feet, board measure, in addition to the sum of sixty-two and one half cents, as provided for in the fourth section of said act, for the purpose of paying the expenses of driving said logs and lumber across said lake."

An act to amend, approved April 20, 1854: "Section 1. The Penobscot Log Driving Company, are hereby authorized to make an assessment for the purposes required in said charter of the sum of eighty cents for every thousand feet of lumber driven by said company, instead of sixty-two and a half cents as is provided in said charter."

An act additional, approved April 9, 1856: "Section 1. The powers granted to the said company are hereby enlarged and extended so as to include within the chartered limits thereof the boom and piers, now in process of being erected at the head of Chesuncook lake, which are to become the property of said company, and all the expenses of erecting and completing the same, are to be assumed and borne by said company."

"Section 2. The company may assess a toll pursuant to the provisions of their charter, not exceeding one dollar for every thousand feet, board measure, of logs driven under the provisions of said act; and all acts and parts of acts providing for any different rate of toll are hereby repealed, except that they shall remain in force as to all tolls heretofore assessed and remaining uncollected."

"Section 3. The directors may authorize the treasurer to give the company notes for the amount necessary to be raised to pay the expenses of erecting said boom and piers for such sums and payable at such times as they direct. Provided, this act shall be accepted by the said company at a meeting called for that purpose."

An act additional, approved March 21, 1864: "Section 2. Said company shall be under no obligation to drive any logs coming into the Chesuncook lake at any other point than from the main west branch unless seasonably delivered to them at the head or outlet of said lake."

An act additional, approved February 24, 1865: "Section 1. The Penobscot Log Driving Company may assess a toll not exceeding two dollars per thousand feet, board measure, on all logs and lumber of the respective owners, which may be driven

by them, sufficient to cover all expenses, and such other sums as may be necessary for the purposes of the company, and all acts and parts of acts inconsistent with this act are hereby repealed."

A copy of votes passed at the annual meeting of the Penobscot Log Driving Company, held February 11, 1873 :

"Voted.   That the directors be authorized and directed to employ a suitable person for agent on the drive."

"Voted.   That it shall be the duty of the person employed as agent on the drive, to determine when and where logs may be left on said drive ; and whoever drives the logs in said drive the ensuing season shall be under the direction of said agent ; and for all logs left without the consent of said agent, a reasonable damage therefor the directors shall collect of the party making said drive, said agent to keep an account of all logs left."

Contract of Henry Davis to drive the West Branch in 1873 :

"Bangor, February 18th, 1873.

Memorandum of agreement between the Penobscot Log Driving Company, of the one part, and Henry Davis, as principal, and George W. Pickering and George C. Pickering, as sureties, on the other."

      *       *       *       *       *

"Said Weed, [A. B. Weed] or other person satisfactory to Davis, to be selected by the directors, is to accompany the drive and may act as clerk of the drive ; he shall decide when the drive shall leave Chesuncook dam, and he is to follow the drive and see that it is faithfully performed.   He shall also decide what logs may be left in the drive, and his decision shall be binding, he to keep account thereof, and all others shall be driven.   His wages to be paid one-half by each party, but to be boarded by Davis."

      *       *       *       *       *

That contract was on the day of its date transferred by Henry Davis to John Ross.

There was evidence tending to show that A. B. Weed was the person agreed upon as agent and clerk as provided by the vote and contract, and that he acted as such.

Defendant's counsel requested the presiding justice to instruct the jury as follows :

"1.   The corporation is not by their charter under any legal obligation to drive the logs ; but the charter gives them the power to drive, and for all such logs as they do drive the corporation is to be paid."

" 2.   If the plaintiff did not file with the clerk the notice required by section three of their charter he cannot maintain this suit."

"3.   If the parties having charge of the drive under the company, acted with integrity and good faith in what they did in making the drive, and in concluding upon the best and proper time for starting, the company is justified in what they did, and would not in that case be liable to plaintiff."

"4.   The decision of Mr. Weed, as the party agreed upon for starting the drive, under the contract and vote, (one or both,) if honestly made, was binding on the plaintiff, and justified the company in leaving as they did."

*Wm. H. McCrillis* and *John Varney*, for the plaintiff, upon the question of the liabilities of the defendants under their charter, depending upon the construction of the word *may* in section one, "may drive all logs," &c., cited : Bouvier's Law Dictionary — word, May ; Angell & Ames on Corporations, 10th ed. 114 ; *Fowler* v. *Larkins*, 77 Ill. 271 ; *Potter's* Dwarris on Statutes, 220, note 27 ; *People* v. *Otsego County Supervisors*, 51 N. Y. 401.   "The word *may* in a statute means *must* whenever third persons or the public have an interest in having the act done which is authorized by such permissive language."

I.   *A. W. Paine*, for the defendant, claimed that the act of incorporation formed a mutual company, and not a stock company, and that no liability was incurred or intended to be imposed upon the company to drive all logs, &c., and cited : R. S., c. 42, § 6 ; 15 Mass. 205 ; 11 N. Y. 601 ; 1 Blatch. 359 ; 68 Maine, 414 ; 7 N. Y. 99 ; 14 Pet. 178 ; 16 How. 261 ; 2 Paine, 584 ; Dwarris on Statutes.

If the duty was mandatory there would be some clause recognizing it as in the case of railroads ; R. S., c. 51 ; common

carriers, c. 52; telegraph companies, c. 53; aqueducts, c. 54; mills, c. 57; toll bridges, c. 50; corporations, c. 46 & 48; banks, c. 47; hawkers, c. 44; fish and fisheries, c. 40; division fences, c. 22; pounds, c. 23; paupers, c. 24; ferries, c. 20; law of the road, c. 19; ways, c. 18.

This case differs from those where *may* has been construed *shall* as in *State* v. *Sweetsir*, 53 Maine, 440; *Milford* v. *Orono*, 50 Maine, 533, and cases cited; 1 Pet. 64; 1 Hill, 545; 61 Maine, 506; 5 Cow. 193; 39 N. H. 435; 42 N. H. 102; 61 Maine, 494. In this connection counsel also cited: *Phelps* v. *Hawley*, 52 N. Y. 23; *People* v. *Supervisors*, 51 N. Y. 401; 3 Hill, 612; 4 Wall. 435; 5 Wall. 708.

II. The positive requirements of section three of the charter, that the owner of logs to be driven shall file with the clerk a statement, is a condition precedent to any liability on the part of the company to drive. *R. R. Co.* v. *Brewer*, 67 Maine, 295; *Veazie* v. *Bangor*, 51 Maine, 509, and 53 Maine, 50; *Johnson* v. *Ins. Co.* 112 Mass. 49; *Prentiss* v. *Parks*, 65 Maine, 559. And there was no waiver of that requirement in this case. *Pratt* v. *Chase*, 122 Mass. 262; 47 Maine, 298.

III. If the company is compelled to drive all the logs seasonably delivered they have the right to rely upon their own best judgment, honestly exercised, as to the time for starting the drive, and not the judgment of a jury afterwards impanneled to try their case. If the defendant's agent acted honestly in fixing upon the time for starting, the plaintiff and all others must abide. 3 How. 83; 7 How. 89–130; 10 Met. 108; 120 Mass. 565; 51 N. H. 128; 37 Conn. 365; 49 Pa. St. 151; 44 Mo. 491; 17 Ohio, 402; 36 Cal. 208; 3 Allen, 170; 1 Hilliard Torts, 108; 11 M. & W. 755; 1 Pars. Contr. 54–5, 73; 6 Met. 13–26; *Larrabee* v. *Sewall*, 66 Maine, 376.

IV. The plaintiff, by offering his logs to be driven by a hired contractor, is bound by the rules adopted for governing the drive as expressed both in the vote and in the contract.

Counsel further argued in support of the motion to set aside the verdict.

DANFORTH, J.    It is contended that this action is not maintainable, and the court was requested to instruct the jury that, "The corporation is not by their charter under any legal obligation to drive the logs; but the charter gives them the power to drive, and for all such logs as they do drive, the corporation is to be paid."

It is claimed that this instruction is required by a fair construction of the terms of the charter.

It is unquestionably true, that when any doubt exists as to the meaning of any language used, it is to be interpreted in the light afforded by the connection in which it is used, the several provisions bearing upon the same subject matter, the general purpose to be accomplished, as well as the manner in which it is to be accomplished.

It is also true that when the terms of an act are free from obscurity, leaving no doubt as to the meaning of the legislature, no construction is allowed to give the law a different meaning, whatever may be the reasons therefor.

The first ground taken in support of the request, is that the defendant company is a "mutual association combined together for mutual benefit to aid each other in the accomplishment of a given object in which all are equally interested," and the inference drawn is, that each is equally responsible for the doings of all. This view is endeavored to be sustained by the alleged facts that "it is not a stock company, has no capital, no power to do anything for others than its own members, no permanent stockholders, no stock, and no provision for raising money to pay any charges or expenses except the expense of driving."

If these suggestions are found to be apparent from the provisions of the charter, they, or a portion of them, will be entitled to great weight, and might perhaps be considered conclusive. The most important of them are not so found.    It may be that the charter was obtained for the mutual benefit of the log owners. Nevertheless, by its express terms it constitutes its members a corporation with all the rights, liabilities and individuality attached to corporations of a similar nature.    The first section provides that certain persons named, with their associates and successors,

"are hereby made and constituted a body politic and corporate," and as such it may sue and be sued, prosecute and defend, may hold real and personal estate, not exceeding fifty thousand dollars at any one time, and may grant and vote money. Thus the charter gives all the attributes of a corporation and none of a simple association. It may not have stock, and if not, it can have no stockholders. But that is not necessary to a corporation and does not constitute an element in any approved definition of it. If it has no stock, it may have a capital, and though it may assess only a certain amount upon the logs driven, the charter does not preclude money from being raised in other ways. Nor is the amount which may be assessed upon the logs driven, limited to the expense of driving. The amendment of 1865 provides for a toll, not exceeding a certain amount, upon the logs driven "sufficient to cover all expenses, and such other sums as may be necessary for the purposes of the company."

Nor do we find any provision "that it may not do anything for others than its own members." By the charter it may drive all the logs and other timber to be driven down the west branch of the Penobscot river, while all owners of such logs may not be members of the company. It does not appear whether the first corporators were such owners or otherwise. In the charter we find no provision prescribing the qualification of the members. The by-laws provide, not that the member shall be an owner of logs to be driven, but he must be an "owner of timber lands or engaged in a particular lumbering operation on the west branch of the Penobscot river, or its tributaries," and can then be a member only on application and receiving a majority of the votes of the members present. Hence the company may be acting for others, not members, while its members may not own a single log in the drive.

There is then no ground upon which this defendant can be held to be a mutual association, acting as a partnership for the benefit of its own members only, each bound by the acts of the others, but it must be held as a corporation acting as such, for the benefit of its own members, perhaps, but also for such other owners of logs as may not choose to become members, or may not possess the required qualification of "being a land owner, or a practical

operator," or may not be able to get the requisite number of votes to make them such. It is a significant fact that in this case it does not appear that the plaintiff is a member of the defendant company, and until that does appear he cannot be subjected to the liabilities of one.

The fact that there is no specific provision for raising money to meet such a liability, as is here claimed, is immaterial. It cannot affect the plaintiff's right to a judgment. The liability of the log owners to be assessed, and its limits, are fixed by law, as also the purposes to which such assessments may be applied. Any recovery against the defendant will not change that law in the slightest degree. No assessment hereafter made can be increased to meet any contingency not contemplated by the charter, and if the plaintiff, after having obtained judgment, is unable to find means wherewith to satisfy it in accordance with the law, he will simply be in the condition of many other judgment creditors before him who have paid largely for that which affords them no benefit.

It is further contended that the action cannot be maintained, because, while the defendant under its charter has the right to drive all the logs to be driven, the obligation to do so is not imposed upon it. In other words, by the provision of the charter, it is left optional with the company to drive such as it may choose to do.

The language is, "and said company *may* drive all logs and other timber that may be in the west branch of the Penobscot river," &c., and it is contended that the word "may" must be construed as permissive and not as imperative. If any argument were needed to show that such is its proper construction, it would seem that the able and exhaustive discussion of this point by the counsel, would leave no room for doubt. The charter was granted as a privilege and not for the purpose of imposing an obligation, and when granted it has no binding effect until accepted by those for whom it was intended. But when accepted it becomes of binding force and must be taken with all its conditions and burdens, as well as its privileges. It cannot be accepted in part, but must be taken as a whole.

In this case the charter conferred the privilege of driving, not a part, not such a portion as the company might choose, but "all" the logs to be driven. This right having been accepted by the company, it became a vested and also an exclusive right. It is therefore taken not only from all other corporations, but excludes the owner as well. If this exclusion was beyond the power of the legislature, it is not for this defendant to complain, for the right has been given to and accepted by it. By its acceptance and exclusion of the owner from the privilege, in justice and in law it assumed an obligation corresponding to, and commensurate with its privilege. It accepted the right to drive *all* the logs, and that acceptance was an undertaking to drive them *all*, or to use reasonable skill and diligence to accomplish that object. This duty is not one imposed by the charter, certainly not by that alone, but is the result of the defendant's own act; it is its own undertaking; virtually a contract on its part, to accomplish that which it was authorized to do.

R. S., c. 42, § 6, referred to by the defendant's counsel, is certainly a very good illustration of the law applicable to this case. There the person whose logs become so intermixed with those of another, as not conveniently to be separated for the purpose of being floated to market, "may drive all the timber with which his own is so intermixed," and "shall be entitled to a reasonable compensation therefor." This clearly is a privilege conferred, a permission given and not an obligation imposed. Hence it is optional with the owner, whether to drive the logs so intermixed or otherwise. But having elected to drive them, he, as the defendant in the case at bar, becomes a bailee for him, and is clearly subject to such care and skill as legally attaches to such a position. True the defendant does not become bailee unless the logs were seasonably delivered, as required by the amended charter, and hence the principal question tried by the jury was, whether they were so delivered. Upon such delivery, the defendant in this case, as the owner in the case referred to, becomes liable to the duties of bailee, not by virtue of the statute alone, but by the assumption of rights conferred.

2.  The court was requested to instruct the jury that, "If the plaintiff did not file with the clerk the notice required by section three of the charter, he cannot maintain this suit." This was refused and hence no question of waiver arises. Whether there was a waiver would be a question for the jury and not for the court. The instruction given, held this notice unnecessary, and thereby took this question from the jury; if, therefore, the notice referred to, is a condition precedent to the obligation of the defendant to drive, the exceptions must be sustained, otherwise not. The notice referred to, was required by the act, unconditionally, and was to contain a description of the logs with the quantity. There is no declaration distinctly stating the purpose for which it was to be filed, but it is found in the section providing for the assessments necessary to pay the expenses, and such assessments were to be laid upon the quantity so returned. It is also provided in the same section, that if the notice, or "statement" as it is called in the charter, is not filed, the directors may assess such delinquent in such sum as they may deem "just and equitable." This is the only penalty prescribed for a neglect in this respect, and this provision seems to contemplate very clearly that the lumber is still to be driven, and that the object of the written statement is rather for the protection of the log owner in the matter of assessments.

Nor does the priority of time assist the defendant's construction. It is true that when mutual acts are to be done by the parties to a contract, and the one is a consideration of the other, and one is to be performed first, that fact is often of great assistance in ascertaining whether it is not a condition precedent. Here the time of filing the statement is fixed, the time of starting is not, but it is to be at as early a period as practicable. Thus in the charter the two periods are independent of each other, and we find in it nothing whatever, to show that one was necessarily to be earlier than the other. The one is certain and definite, the other uncertain and indefinite, depending largely upon the state of the season, and the contingencies of the weather, as bearing upon the practicability of collecting the lumber together and getting it down the river.

The result is, we find nothing in the charter which tends to show that the filing of the statement was intended to be a condition precedent to the obligation to drive, but rather that it was inserted for the sole purpose of regulating the assessment, and since that has been changed by the amendment of 1864, the provision is of little or no practical benefit, if not in fact repealed.

3.   This request is substantially, that if those having charge of the drive, acted with integrity and good faith in what they did in making the drive, and in concluding upon the time of starting, the company would not be liable to the plaintiff.

This is undoubtedly correct as far as it goes.   It correctly contemplates that in making the drive, the defendant acted as an agent of the log owners.   As the corporation must necessarily do its work through agents, it would be responsible for such agents.   Integrity and good faith are indispensable requisites for an agent, but skill and diligence are equally so.   The testimony in this case shows that a considerable amount of skill, as well as experience, was necessary to a successful drive where these logs were to be driven.   This skill and experience, it appears, were equally necessary in determining when to start, as in managing the drive after it was started.   The skill required according to the authorities cited by counsel, is reasonable skill, "which is such as is ordinarily possessed, and exercised by persons of common capacity, engaged in the same business or employment; and ordinary diligence, which is that degree of diligence, which persons of common prudence are accustomed to use about their own affairs."   *Mechanics* v. *Merchants Bank*, 6 Met. 26.   Both these elements were ignored in the request and supplied, so far as necessary, by the instructions.   The defendant, therefore, has no cause of complaint.

4.   "The decision of Mr. Weed, as the party agreed upon for starting the drive, under the contract and vote, (one or both,) if honestly made, was binding on the plaintiff, and justified the company in leaving as they did."   Such was the fourth request for instructions, and if the case shew the facts to be as assumed in the request, it might have been proper to have given it.   But

such is not the case.   The contract referred to, is that made by the defendant with Ross, for driving the logs, and under that contract, the parties to it would undoubtedly be bound by the judgment of Weed, as to the time of starting, "if honestly made."   But the plaintiff is no party to that contract, and therefore is not bound by its terms.   So, too, as to the vote. If that can be fairly construed as authorizing Weed to decide upon the proper time for starting, as perhaps it may be, possibly it may be binding upon all the members of the company.   But as before stated, the case no where shows that the plaintiff is a member, and therefore he cannot be holden by its votes.   On the other hand, both by the vote and contract, Weed is made the agent of the company, and it must therefore be held responsible for the discharge of his duties, not only with honesty, but with ordinary skill and diligence, as before stated.

5.   Upon this point the instruction was, " that if the judgment of Weed was passed—if it was an honest judgment—if he was a competent person to judge, and judged in view of what appeared, and what might be probable from past experience, in relation to the subject matter, the testimony is, of course, important testimony ; how far it would affect you, to bind these parties, is entirely for your decision, in view of all the testimony and circumstances in the case."   The important question presented to the jury was, whether the logs had been seasonably delivered, and this was treated as depending upon the fact as to whether the starting of the drive had been delayed as long as it should have been.   The presiding justice had before instructed the jury that "the delivery must be seasonable, not only in view of the situation of things as they actually existed, but seasonable considering the exigencies and liabilities, as they would at the time appear to exist to the mind of a prudent and competent person acting reasonably."   Bearing in mind the fact that the allegation in the writ, upon which the action is founded, is that of negligence in starting the drive too soon, and thus preventing a seasonable delivery of the plaintiff's logs, the latter instruction would seem to be not only correct law, but peculiarly applicable to the case, and is that contended for in the argument.   The

other instruction which is excepted to, is not inconsistent with this. It does not, as claimed, substitute the after judgment of the jury to the prior judgment of those in charge as to the time of starting. This would be objectionable. Those in charge had the responsibility. They must judge as " competent and prudent men," acting reasonably, aided only by the knowledge gained from past experience, as to the probable future, and without that knowledge gained from subsequent developments which a jury might have, and this in fact was all that was required. But whether this judgment was exercised, or whether in failing to do so, the agents were guilty of negligence, was, as it always must be, a question of fact for the jury, and this was precisely the question submitted. Weed might have been an honest and competent man, and yet might have been negligent in the exercise of his judgment. If in such case his judgment, even honestly made up, is to be conclusive, then he is the judge in his own case. Such law shuts out from the jury the very question to be submitted to them.

The instruction does not take from the jury the evidence to be derived from the agent's judgment, but permits them to consider it and hold it conclusive if they please, but requires them to take with it all the testimony and circumstances of the case. Surely it is not for the defendant to complain of this.

In examining the testimony under the motion, we find it somewhat conflicting. The witnesses were before the jury and they were the judges of the credibility and weight to be given to each. We are not able to say that the jury were biased or acted corruptly.

*Motion and exceptions overruled.*

APPLETON, C. J., BARROWS, PETERS and SYMONDS, JJ., concurred.