MEMPHIS UNION STATION CO. *v.* STRATTON.

(*Jackson*, April Term, 1944.)

Opinion filed March 3, 1945.

324

CANADA, RUSSELL & TURNER, of Memphis, for complainant.

SYLVANUS W. POLK, City Attorney of Memphis, CHARLES C. CRABTREE, and KENNETH C. LARKEY, all of Memphis, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant filed its original bill in the Chancery Court of Shelby County to recover certain privilege taxes paid under protest. It appears that seven suits were instituted, four of them being against the collecting officials for the State of Tennessee and Shelby County and three against the collecting officials for the City of Memphis. The taxes sought to be recovered were levied upon the complainant as a "Railroad Terminal Com-

pany'' pursuant to Item 80, Chapter 108, Public Acts of 1937, and Chapter 408, Private Acts of 1915, which is an amendment to the city charter of Memphis.

Item 80 reads as follows:

''Item 80—Railroad Terminal Companies (Whether operated by owners or leased). In counties of 90,000 inhabitants or over, each per annum $750.00. In counties of from 50,000 to 90,000, each per annum $400.00. Each railroad company receiving and discharging passengers or freight in Tennessee and paying no *ad valorem* [tax] on its freight and passenger cars, shall pay a privilege tax of $750.00 per annum.''

The private act above referred to authorizes the levy of a privileged tax by the City of Memphis of $750 per annum on railroad terminal companies.

Complainant contended in the trial court that it was not subject to the privilege tax because it was not a railroad terminal company within the meaning of the statute. The Chancellor held that it was liable for the tax, and dismissed all the suits, from which decree complainant has appealed to this Court. There is but one assignment of error, as follows:

''The Court erred in holding and decreeing that complainant, Memphis Union Station Company, was, during the years 1939, 1940, 1942, and 1944, a railroad terminal company or was doing business as a railroad terminal company within the meaning of Chapter 108, Public Acts of 1937, Item 80, or Private Acts of 1915, Chapter 408, as amended by Private Acts of 1919, Chapter 801, or that the Memphis Union Station Company was subject to the provisions of either of said Acts and in holding that the privilege taxes levied by said Acts were lawfully levied and collected for the respective years and in therefore dismissing the bills and denying recovery.

"R. 132.

"This was error on the part of the Chancellor because the complainant, Memphis Union Station Company, during the years referred to, was not a railroad terminal company and was not doing business as a railroad terminal company within the meaning of the taxing statutes but was doing business as a passenger station company."

It appears that in the court below complainant averred non-liability on two theories: "First, because by far the major portion of business done by complainant was interstate in character, and, second, because complainant for the years involved was not doing business as a railroad terminal company within the meaning of the taxing statute." At the final hearing, according to the brief of counsel, the first ground was abandoned. It rested its right of recovery upon the sole ground that "it was not doing business as a railroad terminal company."

The question of non-liability is clearly stated by able counsel, as follows:

"The sole question in this appeal is whether the Memphis Union Station, in the light of its operations, is a railroad terminal company within the meaning of these statutes."

The words "these statutes" clearly refer to the Act of 1937 and the Private Acts of 1915, to which we have made reference.

It is urged upon us that since this Court used the words "Railroad Terminal Company" and "Terminal Railroad Company" interchangeably in the construction of the taxing statutes, as in *State* v. *Union R. Co.*, 129 Tenn. 705, 168 S. W. 575, Ann. Cas. 1915D, 1240, and *Ryan* v. *Louisville & N. Terminal Co.*, 102 Tenn. 111, 50 S. W. 744, 45 L. R. A. 303, we should rest our decision upon the definition of these words as announced by the Court; or, rather,

to consider the definition, as found in *United States* v. *Terminal Railroad Association of St. Louis,* 224 U. S. 383, 32 S. Ct. 507, 56 L. Ed. 810, in construing the meaning of our taxing statutes.

██ Appellant earnestly insists that it is not a railroad terminal company in the light of what it does and does not do within its corporate authority. We readily agree that consideration must be given to what it does in deciding if it is a railroad terminal company, such as the legislature had in mind when the statutes were enacted. Moreover, in arriving at legislative intent, in designating railroad terminal companies liable for the payment of a privilege tax, the Court should not be entirely controlled by any narrow technical definition, but by what a terminal company has authority to do and what it actually does. If what it fails to do or elects not to do under its charter is determinative of liability under the statute, the result would be that every person, firm, or corporation engaged in a particular business which is classified as a privilege could escape liability by merely refraining from doing some of the things generally regarded as part of such business. In *Aero Mayflower T. Co.* v. *Georgia Pub. Serv. Comm.,* 295 U. S. 285, 55 S. Ct. 709, 711, 79 L. Ed. 1439, 1443, 1444 it was said (CARDOZA, J.) : "One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may." See also our own case, *Nashville Water Co., Inc.,* v. *Dunlap,* 176 Tenn. 79, 86, 138 S. W. (2d) 424, 427, wherein it was said (SMITH, Spl. J.) : "As the company is endowed by the charter with all the rights and privileges of a public utility, the fact that it has not wholly exercised these powers and privileges cannot legally change its character."

.. In the instant case it is argued that appellant is "operating merely a passenger station facility which might be carried out by each railroad separately for its own benefit, or which may be carried out by all of them jointly," and that its facilities are not made available to the several railroad lines it serves for handling freight traffic, etc. It is argued that the tax imposed is "for the privilege of doing a certain type of business and not a tax for the privilege of doing business in a certain form." In other words, that the Memphis Union Station is "not exercising a privilege, for the exercise of which the tax is levied." In support of this argument counsel have cited *State* v. *Union R. Co.*, 129 Tenn. 705, 168 S. W. 575, Ann. Cas. 1915D, 1240, and *Illinois Central R. Co.* v. *City of Memphis*, 21 Tenn. App. 327, 110 S. W. (2d) 352, 354.

In *State* v. *Union R. Co., supra,* the Court held that a "terminal corporation" was liable for a privilege tax where it assisted railroad transportation companies.

In the *Illinois Central Railroad Case* the Court of Appeals held that the company was not liable for the tax because it was not a railroad terminal company within the meaning of the statute; that it "is not incorporated as a railroad terminal company under the Acts of 1893, Chapter 11, Code sections 4060-4065."

█ It is here insisted that these decisions should be controlling. In the instant case, however, defendants have pointed out that the Memphis Union Station Company does for its five tenant lines many things that the Illinois Central did not do and was not obligated to do, as follows: (1) It takes charge of the trains when they arrive in the station; (2) it does necessary switching, with its own employees, for its tenant lines; (3) it makes up and breaks up with its own employees the trains of its tenant lines; (4) it stores the cars of its tenant lines

on its side tracks while they are waiting in the station; (5) it inspects and makes repairs with its own employees, for its tenant lines (this was done by the Illinois Central only in cases of emergency), in its shops and roundhouse, such as a change of brake shoes, journal brass, springs, changing wheels when needed, electrical equipment air conditioning equipment and other like work on both cars and locomotives; (6) it cleans the cars of the tenant lines (done by the Illinois Central for its tenant lines only in emergencies); (7) it supplies oils, greases, fuel, and sand for the locomotives (done for its tenant lines by the Illinois Central only in emergencies).

It clearly appears from the record that the Memphis Union Station Company (1) owns and operates ''a railroad passenger station building on Calhoun Street in the City of Memphis, together with certain facilities necessary to the successful operation thereof;'' (2) it is a Tennessee corporation pursuant to Chapter 11, Acts of 1893; (3) its stock is owned equally by five commercial railroads entering the City of Memphis; (4) it has an outstanding bond issue which is held by the public generally. Its fixed expenses of operation include the interest on its outstanding bonds prorated between the five stockholders, who are the only companies using the facilities of appellant. The company owns no cars of any kind, and until 1942 it owned no locomotives, but during the year 1942, it has owned a Diesel switch engine; (5) it owns no tracks except those on its own premises in the station grounds, which are used for temporary storage for idle cars, etc.; (6) it cleans coaches and makes repairs to both cars and engines of its several tenants; it switches trains from the tracks where passengers are unloaded or loaded to other tracks in the station grounds. It maintains an engine house on its premises, with necessary

tools and equipment to render light repairs to the engines of the tenant lines. The cost of the maintenance of this engine house is prorated as a fixed expense, but the cost of labor and materials used in servicing any particular locomotive is charged to and paid by the tenant company owning the locomotive. The company handles no freight of any kind or character. It neither hauls, moves, transfers, nor switches any cars from one line to another. It provides a ticket office in the station building for the sale of tickets and provides employees to sell tickets, but derives no commission for this service. It is engaged in other similar activities not necessary to be further mentioned. We find that it does everything it is authorized to do under its charter as a railroad terminal company, as provided in Code, section 4060.

In addition to the foregoing summary of its activities, it appears from the testimony of Mr. Pennebaker, an officer of appellant, that it condemned a part of the land upon which it has continually operated. By said statute it was empowered to acquire land upon which "to construct, operate, and maintain passenger stations, [including] depots, . . . sheds, and storage yards; and freight stations comprising freight depots, warehouses offices, and freight yards," etc. A careful reading of the testimony of appellant's witness Mr. Pennebaker leads to the ultimate conclusion that the Memphis Union Station Company is doing all the things that are authorized by the Code to be done by a terminal company except that of handling freight traffic. Appellant practically admits that this is true, but insists that it cannot be classified as a railroad terminal company because its facilities are solely for the accommodation of passenger traffic—in other words, that it is only operating a "Passenger Station." It is insisted that it merely operates

such a station and it is comparable to the ones located at Brownsville and Somerville, Tennessee (R. pp. 126, 127). If this were true, we would of course be constrained to hold that it was not subject to the tax imposed, but the contrary is true, as we have pointed out in this opinion.

█ There can be no doubt that the Legislature in passing the revenue act imposing a privilege tax upon terminal companies had in mind such companies as were expressly authorized by the above mentioned statute. The revenue act in question and the Act of 1893, supra, under which appellant was incorporated, must be considered and construed *in pari materia*. Moreover, it clearly appears from the testimony of Mr. Pennebaker that the appellant, prior to 1939, considered itself a railroad terminal company within the meaning of the tax statute. He testified as follows:

"Q. But it paid the tax during all of those previous years? A. That is correct.

"Q. And prior to 1939? A. That is correct."

█ Now, in *Illinois Central R. Co. v. Memphis, supra,* upon which reliance is had, the Court found as a fact that "It affirmatively appears that no effort has ever been made by the executive authorities of the State to collect this tax from the Illinois Central." While the fact of long acquiescence by appellant is not conclusive of the question, we think it is most persuasive.

Another important fact in the Ilinois Central case was considered as important in deciding that it was not a railroad terminal company, that is, that its tenant lines, Rock Island and Frisco, did not guarantee the principal or interest of any bonds of the Illinois Central, and that these companies did not own any stock or bonds in said railroad company. The Court of Appeals further found as a fact, and not disputed, that the Illinois Central op-

erated its passenger station as an "integral part of its business," under its charter as a commercial railroad company, and not as a separate and distinct legal entity.

The foregoing facts clearly distinguish that case from the one now before us.

■ The further argument of appellant's counsel that the company is not operated at a profit is not determinative of its liability for the tax in question. Under its charter it is not denied the opportunity of making a profit in its business. In *Weymouth* v. *Penobscot, etc., Co.,* 71 Me. 29, cited with approval in *Nashville Water Co., Inc.,* v. *Dunlap, supra,* it was held that a corporation, endowed with privileges to be exercised for the public benefit, cannot escape the performance of its duties to the public by picking and choosing certain charter provisions, which it deems beneficial to it, and failing or refusing to exercise others, which it may deem onerous and non-profitable. We think it clearly appears that none of the five tenant lines of railroad that are served by appellant performs any terminal service for itself. In a city the size of Memphis they must, as a matter of convenience, if not of necessity, engage a terminal company to perform such services. They could contract with appellant to provide terminal facilities for the handling of freight traffic, if they so desired. The fact that such a contract has not been entered into does not make the appellant any less a railroad terminal company within the meaning of our tax statute.

The decree of the chancellor is affirmed.